Good morning, Ben Coleman. I represent the petitioner and appellant David Martin. In Heller and then in McDonald, the Supreme Court has clearly established that an individual has a right to self-defense under the Second and Fourteenth Amendments. Does a prisoner have the same right to self-defense inside the prison as he does outside the prison? It's our position that he actually has perhaps even more of a right, that when the state confines somebody in an institution where he's surrounded by dangerous persons and removes many of the obstacles that could protect his safety, that if anything that individual has even a greater right to self-defense, which is actually embodied in the Eighth Amendment as well. All right, let me ask one more question. Do we have to find that there is no right to self-defense for inmates in order to affirm the state court judgment? Yes. All right, thank you. You also raise an incredibly creative argument with Heller and McDonald. Are you seriously contending that the right to self-defense in this case stems from the Second Amendment case regarding gun use in the home? Well, we believe that the discussion that the Supreme Court engaged in actually establishes that the constitutional right to self-defense is perhaps inherent in the Constitution itself. So even though it specifically applies only to the home, at least the Supreme Court has stated thus far, there's no case that I'm aware of that says that McDonald or Heller apply outside the home. Are you aware of any that find that it applies outside the home? Well, let's assume for a second it only applies within the home. In this sense, this is the prisoner's home. That's an interesting argument. This is where he lives. So even if the court were to conclude that it only applies within the home, we still think that it would be applicable here. So basically what you're saying is that prisoners are entitled to be armed in the prison  Is that what you're saying? We're just saying that they're entitled to self-defense. But with a firearm. That's what Heller's all about. Well, Heller says that the state can impose reasonable restrictions on the right to firearms. And is it your position that it would be unreasonable of the prison officials to deprive these poor inmates of firearms to protect themselves? No. But it would be unreasonable to strip them of their right to self-defense. But again, don't you think it's a stretch to go from Heller to the concept of self-defense in the way that this case presents it? Well, I don't think it's a stretch at all. Because Heller was just simply articulating the well-established principle that individuals are entitled to a constitutional right to self-defense. You're a very creative lawyer, counsel. I give you credit for that. But that's really a stretch, don't you think? I don't think so at all. I think it's been since time immemorial. An individual has had a right, an inherent right to self-defense. It's embodied in the Constitution itself. And the fact that the right is part of both the Second Amendment and also the substantive due process rights that you have under the Fourteenth Amendment as well. The fact that you also, in certain circumstances, have the right to bear arms as part of your right to self-defense does not mean that you either only have a right to bear arms in your home for self-defense or no right at all. And so it's our position that individuals, that the Supreme Court has clearly established that individuals do have a right to self-defense and that the only basis for the California Court of Appeals' decision in this case was that the petitioner in this case admitted that he engaged in a fight to defend himself from an attack. So the felon's possession statute should be unconstitutional then, right? Because they have a right to bear arms? No, I think Heller and McDonnell make that clear, that it's not unconstitutional. What about Vonsay? What about? What about the Vonsay case? Doesn't that expressly find that felons in possession are, in other words, they have no constitutional right to self-defense in the sense of having a firearm? Well, I don't think the case says you don't have a right to self-defense. It just says you don't have a right to carry a firearm. Yeah, but if the purpose is self-defense, self-proclaim, then aren't you stretching it way, way, way beyond Heller and McDonnell to reach your point? Well, I don't think so. I mean, a felon has a right to self-defense. He may have a right to express that right with a firearm, but I don't think any court would say that because you're a felon, if somebody attacks you, you don't have a right to punch them back or defend yourself. I mean, felons don't lose all their constitutional rights. They may lose some. They lose the right to carry a firearm. Are you suggesting that the Seventh Circuit's decision in Scruggs is now inconsistent with Heller and McDonnell? Yes. I don't even think Scruggs actually reached this issue. The prisoner in Scruggs was contending that he had a right to defend a third person, not himself. So from a factual standpoint, I don't think the decision even reached this issue. But to the extent that it did, it's been overruled. I mean, it's contention that there is no right, constitutional right to self-defense is clearly wrong under Heller and McDonnell. And the Seventh Circuit would know that by reading Heller and McDonnell? They would know that their decision in Scruggs was wrong? Yes. As I said, the Scruggs decision, again, wasn't even a self-defense case. It was, I have the right to defend somebody else. Counsel, do you have an Eighth Amendment argument? I believe that we do as well. Why don't you pursue that for the moment? And that is that when the state or the federal government imprisons somebody, they have an obligation to not create circumstances that unreasonably subject them to harm from other prisoners or other types of harm. In this case, it's our position that the finding that you don't have a right to self-defense is a violation of the Eighth Amendment because it unreasonably restricts a person's ability to defend themselves against attack. You've been very careful in how you analyze Scruggs. Do you have any Supreme Court case that says that a prisoner has the right to self-defense in the context of this case? Well, we did cite the case from the 1800s, I think it was Kirby, where the U.S. Supreme Court said that a prisoner doesn't have to stay within the prison that's burning down. He has a right to escape if the prison's burning down, which is the principle is that you have the right to preserve yourself, and so you can violate the fundamental rule of a prison that you stay within the prison walls if you have to survive and the prison's burning down. And we think that that supports our position that— That gets you past AEDPA? A, we think it gets it past AEDPA. We also believe that because the—and I will 28J this case. There's a case from this court, Priddle v. Morgan, which is 313 F. 3rd, 1160. That's 9th Circuit, 2002. When the state does not engage in any analysis of the constitutional issue, the AEDPA standard is relaxed because the point of the AEDPA standard of review is comedy, that we're going to defer to the state court decision. But in this case, the state courts did not analyze the constitutional issues at all. Were Heller and McDonald raised at the state courts? They were not because they were decided after the California Court of Appeals. Well, how can you benefit from that rule if the cases that you're relying on came after the California courts decided that? Well, I think that there are multiple reasons. Number one is that the state has not raised the Teague argument, so we believe they've waived any Teague claim. Number two, even if— Did you raise it by not bringing it up at the state court as well? Well, he did raise the claim of self-defense. He couldn't cite Heller or— Could he cite the Second Amendment? He didn't cite the Second Amendment. I believe he cited the Fourteenth Amendment, which McDonald says the Second Amendment right to self-defense is incorporated through the Fourteenth Amendment to the states. Well, that would also incorporate— that would mean that he had cited the whole Bill of Rights under that logic, wouldn't it? Well, we also—I think he's a pro se Petitioner proceeding on his own. But to get back to the question as to how can we take advantage of Heller and McDonald, even if Teague—even if the state had not waived the Teague argument, Teague—there's a basic exception to Teague, which is that if there is a new rule, it applies retroactively if it's a rule that establishes private—that certain private individual conduct is beyond the power of lawmaking authorities to prescribe. And this is precisely what we're talking about here, is the right to self-defense and to defend oneself. So even if a Teague-type analysis were to govern here, it's our position that we can retroactively rely on both Heller and McDonald, even though they were decided after the California Court of Appeals' decision. If that's one position— Counsel, you cited the California case that was not in your brief. Is that correct? The case that I cited? Yes. It was a Ninth Circuit case, and I will 20A-J that— That was in your brief? This case was not in my brief, and that's why I will 20A-J it when I get back to the office either later today or tomorrow. All right. And that was just a case on the EDPA standard being relaxed when the state courts don't engage in any constitutional analysis. All right. I see I've got 30 seconds left, so I'll— Thank you. We'll hear from the State. Good morning, Your Honor. Excuse me. Please, the Court, Deputy Attorney General of California Greg Marco on behalf of Apelli. The district court's judgment in this matter should be affirmed for at least three reasons. Number one, because the disciplinary action did not affect the fact or duration of Mr. Martin's confinement. There is no federal habeas corpus jurisdiction. Mr. Marco, what worries me about this case, I'm in prison, someone comes at me with a knife. Is it your position I have no right to defend myself? Well, first of all, Your Honor, that's actually not an issue that comes up in this case. It's just a curious question here. Absolutely, you have a right to defend yourself, and these are facts that are taken into consideration by the senior hearing officer who decides the disciplinary action. In this matter, there were no facts. All right. Well, what is the extent of that right? I assume I can't carry a gun to protect myself. What is the extent of the right to self-defense in prison? Well, really, it's probably a case-by-case determination, and that's why it's up to the senior hearing officer to weigh the evidence that's before him to determine whether or not it's actual self-defense, whether or not it's excessive, and so forth. All right. Do we have to find that there is no right to self-defense in order to affirm the state court? Absolutely not. And I, again, reiterate that the self-defense issue really isn't an issue in this case. Going back to the original decision, when the senior hearing officer is reviewing this matter, there was no evidence of self-defense. There was evidence of two people fighting. There were injuries of two people fighting, and that's basically it. And so he made his determination based on the fact that there was no self-defense evidence at all. So it's actually a red herring issue in this case. Okay. Let me ask you one more question, and then I'll let you proceed with your planned argument. Absolutely. I read that the Cheney case, a U.S. Supreme Court case in 1989, is saying that it's the duty of the prison to protect those involuntarily committed to custody and provide reasonable safety. What is your response here? Was that provided here? Well, it's a difficult question to answer because the prisons cannot protect for every individual circumstance that comes up within any given day. And that's why prisons are given quite a bit of latitude in terms of their rules and regulations and how they run the prisons. They do the best they can to protect as many people as they can. Certainly circumstances will come up where things happen outside of view or what have you, and they can't be responsible for every incident that happens in any given circumstance. So your position is this was just a prison fight? I mean, two prisoners went at each other, and they were both equally guilty of fighting. The evidence that was before the senior hearing officer in this matter indicated that it was a mutual fight, and that was the reason why he found Mr. Martin guilty of that charge. Thank you. You may proceed. Thank you. Just briefly again, the fact that the disciplinary action did not affect the duration of Mr. Martin's confinement indicates that there is no federal habeas corpus jurisdiction in this matter. Mr. Martin raises the claim that, well, any disciplinary action could affect my suitability for parole. Does the fact of his ‑‑ does it affect his eligibility for parole? Not at all, Your Honor. It doesn't affect his eligibility at all. He raised the claim that it potentially could affect whether the board actually finds him suitable for parole, but this court in Wilson v. Terhan stated that that was not speculative enough to raise a collateral consequence out of a disciplinary action. And this court has cited that case favorably as recently as last October in upholding a dismissal of a habeas petition challenging a disciplinary action based on the fact that it didn't set forth any collateral consequences. So even assuming that there is federal habeas jurisdiction, though, there is no clearly established federal law that supports the relief that Mr. Martin is seeking. What role, if any, does Swore That v. Cook play in this? It's interesting. I don't think it plays any role in it. The only clearly established federal law that actually does play a role is Superintendent v. Hill. And that states that if the disciplinary action is or if the disciplinary decision is supported by some evidence, it should be upheld. And that's exactly what happened in this case. Well, as you know, Swore That talks about, in effect, we can analyze whether there was procedural due process, but as to the state law itself, we're not to get involved in that, and I guess in terms of the non-procedural and the more substantive issue. And I guess that's my concern is whether the California Code of Regulations 15, Section 3005, and others fall into the category of substantive state law. And as long as there is some evidence, if you will, we don't analyze it any further. Is that correct? That is correct, Your Honor. And in Sandin v. Connor, the Court actually stated that the regulations really are just guides for the prison administrator in how to run the prison. They don't establish any sort of fundamental rights for the inmates themselves. It's just basically how they run the prisons themselves. So that is correct, Your Honor. And so finally, the third point is that Mr. Martin has not pointed to any facts that have been unreasonably determined by the state courts here at all. He makes a claim of self-defense, but really there is no evidence of self-defense that was presented, and that was why the senior hearing officer did not make a finding of any self-defense. Unless there's any further questions, I'd be willing to submit. Thank you, Mr. Marco. Thank you. Mr. Coleman, you reserved a little bit of time. I wanted to make two points. The first was with respect to Judge Smith's question about Swarthout, and the second was to answer Judge Nelson's questions about what this Court is reviewing and whether the self-defense issue is right in this case, basically. With respect to Swarthout, I think that that case can be run off in a direction that perhaps the Supreme Court did not intend with respect to, well, we just look at whether he got procedural protections that he was afforded, and we don't look at anything else. I mean, surely the California Parole Board cannot say, we're denying you parole because you're black. And if the Supreme Court meant that you were then prevented from getting any review of that decision because you were given your notice and you were given an opportunity to be heard and that's all you're entitled to, that clearly is not what the Supreme Court meant to say. What does the Supreme Court mean when it said that beyond the procedural aspect, it is no business of the Ninth Circuit? If the sole claim is a procedural due process claim, then that's all you're looking at is procedural due process. But, for example, the black inmate hypothetical, he would be making in addition an equal protection claim, that you cannot deny me parole because of my race. In this case, we are making another independent constitutional claim that the deprivation here is in violation of both the second, eighth, and substantive due process rights to self-defense. So this court doesn't simply look at the procedural issue and say, well, you were given your procedure, our job is done. I don't think that's what Swarthout means. To answer Judge Nelson's question about, you know, the State's position in response was the self-defense issue is a red herring and they keep on saying that the administrative hearing officer found that there was no evidence of self-defense. Well, A, that's not true. If you look at the report, he didn't find that. But, B, what the court is reviewing is not the administrative hearing officer's determination. The court is reviewing the California Court of Appeals' decision. And what the California Court of Appeals says, and all they say, is that, according to Martin, he never possessed a weapon and fought the other inmates solely to protect himself. To prove his innocence, he requested that the weapon be tested for DNA evidence and that he be given a polygraph examination. Neither request was granted. And then it says, at the hearing on the rules violation, Martin pleaded not guilty and reiterated his self-defense claim. The hearing officer found that the evidence not support a charge of battery  Instead, based on Martin's admission that he had, in fact, fought with the other inmate, the hearing officer found guilty, found Martin guilty of the lesser charge of mutual combat with serious injury. So what the hearing officer did is said, well, you admitted you fought in self-defense. Based on that fact, you've admitted that you engaged in a fight. I'm finding you in violation. And then the California Court of Appeals, their analysis is, in this case, Martin's own admission provides some evidence to support the finding he engaged in mutual combat. So the only evidence that the California Court of Appeals relied upon to sustain the administrative finding is that Petitioner Mr. Martin admitted that he fought in self-defense. So the issue, this isn't a red herring. The issue is right for review. And that's why when Your Honor asked me, do we need to find that there is no right of self-defense to affirm, my answer is yes. Did he admit that he did it in self-defense or he admitted that he was fighting? The California Court of Appeals, the exact language is, according to Martin, he never possessed a weapon and fought the other inmates solely to protect himself. And then it says, at the hearing on the rules violation, Martin pleaded not guilty and reiterated his self-defense claim. And those are the facts that the Court is reviewing. Thank you, Mr. Coleman. We thank both counsel for the argument. Martin v. Tilton then is submitted. The next case on the argument calendar is United States v. Gonzales-Milkor.
judges: Nelson D. W., Bybee, Smith M.